IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

|  |  |
|---|---|
| ROBERT MONTCLAIR III,<br><br>Plaintiff,<br><br>vs.<br><br>WESTMORELAND RESOURCES, INC.,<br><br>Defendant. | CV 12-23-BLG-CSO<br><br>ORDER |

Plaintiff Robert Montclair ("Montclair") is proceeding *pro se*. His amended complaint presents a single claim – that his former employer, Defendant Westmoreland Resources, Inc. ("Westmoreland"), violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., when Westmoreland terminated his employment and did not rehire him because of his disability. *Am. Cmplt. (ECF 5)¹ at* ¶¶

---

¹The ECF citation refers to the document as it is numbered in the Court's electronic filing system. Citations to page numbers refer to those assigned by the ECF system.

1

*1, 13-14.*[2]

Pending is Westmoreland's summary judgment motion. *ECF 15.* For the reasons explained below, the Court will grant the motion.

I. **BACKGROUND**[3]

Westmoreland employed Montclair at its Sarpy Creek mine where he worked the dragline ultimately as a dragline oiler. On January 15, 2009, MONTCLAIR called Doug Goodheart, Westmoreland's human resources officer, and told Goodheart that he could not work because of pain in his back. On January 20, 2009, Goodheart informed Montclair by letter that his absence beginning on January 15, 2009, would be treated as leave under the Family and Medical Leave Act ("FMLA"). Goodheart's letter also stated, in part:

> Because your leave is for personal medical reasons, you will be required to contact the Human Resources Department

---

[2] Upon the parties' written consent, this case was assigned to the undersigned for all proceedings consistent with 28 U.S.C. § 636(c). *Clerk's Notice of Assignment to U.S. Magistrate Judge (ECF 14).*

[3] The Court compiled background information from Montclair's allegations asserted in his Amended Complaint (*ECF 5*) and from Westmoreland's Statement of Undisputed Facts (*ECF 17*) and exhibits attached thereto (*ECF 17-1 at 1-43*). The information is undisputed except where indicated.

and submit a full unrestricted release from your attending
medical practitioner prior to your return to work. I will
follow this letter with a physical job requirements form, for
your attending physician to utilize in determining your
ability for an unrestricted release.

*ECF 17-1 at 31*.

While on FMLA leave, Montclair underwent back surgery. On April 20, 2009, Goodheart informed Montclair by letter that Montclair's twelve weeks of FMLA leave had expired. Goodheart's letter also provided, in part:

Westmoreland Resources Inc. will no longer hold a position
open for you as was required under FMLA. As per the
Mining Agreement between Westmoreland Resources Inc.
and the Operating Engineers, your name will remain on the
seniority list for a period of 24 months, which will be
January 15, 2011. Your return to work will require a full
release and be dependant [sic] upon the availability of a
position for which you are qualified to perform. You may
apply for posted positions.

*ECF 17-1 at 32*.

Four months later – on August 24, 2009 – Montclair had a follow-up visit with his surgeon, Dr. Alan Dacre, M.D., who noted:

[Montclair] follows up today almost six months after
undergoing anterior/posterior fusion at L5-S1. He still has
some similar pain although he is otherwise doing reasonably
well. He still has back pain which he rates at about 6-7. He

3

> does feel like he is ready to go back to work.
>
>   \*  \*  \*
>
> We will allow him to return to work at six months with lifting, pushing, and pulling restrictions of up to 50 pounds on an occasional basis. He seems comfortable with this.

*ECF 17-1 at 33*.

Dr. Dacre also gave Montclair a handwritten release form that allowed him to return to work as of September 14, 2009, with these limitations: "no lifting, pushing or pulling >50# on occasional basis." *ECF 17-1 at 34*. After his August 24, 2009 visit with Dr. Dacre, Montclair contacted Westmoreland about returning to work and provided Westmoreland with the release form that Dr. Dacre had given him. Montclair believed that Washington Group, his employer before Westmoreland acquired the mine where Montclair worked, had allowed workers to return to light duty positions until they obtained a full release, but that "Westmoreland wasn't like that." *ECF 17-1 at 18-19, 28*.

On September 11, 2009, after Montclair had provided Westmoreland with Dr. Dacre's August 24, 2009 release, Goodheart

informed Montclair by letter that Westmoreland needed Montclair's physician to provide a release using a provided job description for a dragline oiler. The letter explained:

> The medical release you provided us has restrictions listed. We need your attending medical practitioner to provide a release utilizing the enclosed physical job description. If there are restrictions we would request the restrictions be based on the requirements of the job.
>
> Once we receive your release we will determine what if any job openings exist that you would be qualified to perform. As a reminder, Westmoreland Resources requires a full unrestricted release as we do not have limited duty positions.

*ECF 17-1 at 35*.

On September 18, 2009, Montclair returned to see Dr. Dacre. He showed Dr. Dacre the job description that Goodheart sent him. Montclair explained to Dr. Dacre that of the duties listed on the job description, the only ones he did individually were mopping and cleaning up oil and that everything else was done as part of a team of workers and that he would not have to lift anything heavy by himself. Dr. Dacre provided Montclair with an updated release indicating that Montclair was released to return to work without restrictions.

5

Montclair returned to Westmoreland with Dr. Dacre's second release and gave it to Don Kollekowski, a Westmoreland safety manager, and Jerry Gillespie, Westmoreland's mine manager. Montclair testified in his deposition that both told him he was "good to go." *ECF 17-1 at 20-21*. Montclair did not talk to Goodheart because it was late in the afternoon when Montclair brought the release to Westmoreland. *Id. at 21*.

Montclair also testified in his deposition that, after receiving Dr. Dacre's second release, Goodheart had Don Kollekowski tell Montclair that Goodheart wanted him to see another doctor. Goodheart states in his declaration:

> Westmoreland was concerned about the discrepancies in Dr. Dacre's releases, which were signed less than a month apart. Accordingly, Westmoreland asked Montclair to be evaluated by another doctor in Sheridan, Wyoming. That doctor – Dr. Strahan – also released Montclair to work without restrictions.

*ECF 17-1 at 4*.

On September 30, 2009, the same day that Dr. Strahan released Montclair to work without restrictions, Goodheart met with Montclair. Montclair testified in his deposition that Goodheart informed him that

6

Westmoreland had no open positions. In his Amended Complaint, Montclair alleges that Westmoreland told him he could work as a coal hauler. *ECF 5 at ¶ 11*. Westmoreland admits in its Amended Answer that it told Montclair that there were no positions available on the dragline and admits that it offered him the alternate position of "Coal Hauler Operator." *ECF 11 at ¶¶ 10-11*. Montclair testified in his deposition, however, that at the meeting, Goodheart and Gillespie confirmed that Westmoreland did not have any open positions for coal haulers. *ECF 17-1 at 22-23*. Montclair asked Goodheart to lay him off because Montclair could get unemployment, but Goodheart told Montclair that he would not. *Id. at 23*.

After Montclair received the release from Dr. Strahan, neither Goodheart nor Gillespie ever said that they did not feel comfortable returning Montclair to work because of his back problems. *Id. at 23-24*. Montclair testified in his deposition that he continued to stop in at Westmoreland to ask Goodheart about any open positions, but Goodheart continued to tell Montclair that there were no openings. The last time Montclair checked in with Westmoreland was in

November 2009. At some point, Goodheart told Montclair that he did not need to keep stopping in at the mine and that Goodheart would call him if there was a position for him. *Id. at 24-25*.

On February 23, 2010, Goodheart sent Montclair a letter informing him that Westmoreland had terminated Montclair's employment as of February 22, 2010. *Id. at 28, 40*. The letter stated, in part:

> This letter will serve to notify you that your employment with Westmoreland Resources Inc. is being terminated effective February 22, 2010. You began your FMLA January 15, 2009. You ran out of FMLA on April 15, 2009 and at that time were placed on a leave per the [Collective Bargaining Agreement]. You were given a full release to return to work on September 30, 2009. In a meeting with Jerry Gillespie and me, we informed you we did not have any openings on the dragline but we would put you on [as] a coal hauler. You expressed concern over this and wanted to get back to us. We have not heard anything from you since that time and as such your employment has been terminated.

*Id. at 40*.

At some point before Westmoreland terminated his employment, Montclair applied for unemployment benefits. *Id. at 24*. Goodheart informed the State unemployment benefits investigator that

8

Westmoreland had offered Montclair a coal hauler position, that Montclair had never responded, and that Westmoreland interpreted this as Montclair quitting. *ECF 17-1 at 5 (¶ 11)*. Montclair eventually was awarded unemployment benefits, but not until after Westmoreland terminated his employment in February 2010. *ECF 17-1 at 25*. Also, more than a year after Westmoreland terminated his employment, Montclair applied for, and eventually received, Social Security benefits. *Id. at 27*. At the time Westmoreland terminated Montclair's employment in February 2010, no doctor had imposed any restrictions on Montclair's ability to work. *Id. at 30*.

## II.    SUMMARY OF WESTMORELAND'S ARGUMENTS

Westmoreland filed its summary judgment motion, supporting brief, and statement of undisputed facts on January 25, 2013. *ECF 15, 16, and 17*. Montclair's response to Westmoreland's motion was due by February 15, 2013. To date, Montclair has not filed any response.

In seeking summary judgment, Westmoreland argues that Montclair cannot prove that Westmoreland terminated his employment because of a disability. *Westmoreland's Brief (ECF 16) at 15*.

Westmoreland argues that Montclair cannot establish a prima facie case of discrimination under the ADA for two principal reasons.

First, Westmoreland argues that Montclair cannot show that he was disabled because: (1) he does not have an impairment that substantially limits the major life activity of being able to work because, at all relevant times, he was able to work, *id. at 16-17*; (2) he has no "record of impairment" as required for an ADA claim because surgery and the temporary inability to work are not sufficient, *id. at 17-19*; and (3) he has admitted that Westmoreland did not regard him as disabled, *id. at 19-20*.

Second, Westmoreland argues that it did not terminate Montclair's employment because of a disability as Montclair claims. *Id. at 21*. Rather, Westmoreland argues, under Montclair's own version of events, Westmoreland informed Montclair that he could work as a coal hauler and that Westmoreland would call him when a coal hauler position became available. *Id.* Also, Westmoreland argues, Montclair testified in his deposition that he does not believe that Westmoreland terminated his employment because of a disability but rather that

10

Goodheart would not put him back to work because Goodheart is racist, a claim Montclair has not made in this action. *Id. at 21-23*.

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Fed. R. Civ. P. 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible

discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

IV.   **DISCUSSION**

As noted, Montclair failed to respond to Westmoreland's summary judgment motion. Because Westmoreland filed its motion on January 25, 2013, the time for Montclair to respond expired more than three weeks ago. *Local Rule 7.1(d)(1)(B)* ("Responses to motions ... for summary judgment must be filed within twenty-one (21) days after the motion was filed."). The Local Rules provide that Montclair's failure to

13

respond may be deemed an admission that Westmoreland's motion is well-taken. *Local Rule 7.1(d)(1)(B)*. But the Court still must consider the sufficiency of the summary judgment motion. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *see also Henry v. Gill. Ind., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993).

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to ... [the] discharge of employees[.]" 42 U.S.C. § 12112(a). To state a prima facie case under the ADA, an employee must show that he: (1) is disabled under the ADA's definition; (2) is qualified, such that he can perform the job's essential functions; and (3) was terminated from employment because of his disability. *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). The Court concludes that Montclair has not met his burden of presenting evidence that would raise a genuine issue of material fact respecting the first requirement of a prima facie case. Thus, summary judgment in Westmoreland's favor is appropriate.

Respecting the first prong of a prima facie case, the ADA defines "disability" in three ways: (1) "a physical or mental impairment that

substantially limits one or more major life activities[,]" 42 U.S.C. § 12102(1)(A)[4]; (2) "a record of such an impairment[,]" 42 U.S.C. § 12102(1)(B); or (3) "being regarded as having such an impairment[,]" 42 U.S.C. § 12102(1)(C).[5]  Montclair has failed to present evidence to satisfy any of these three definitions.

First, the only major life activity that Montclair has raised in this action is his ability to work, which the ADA lists as a major life

---

[4]"Major life activities" under the ADA includes working, which is the major life activity upon which Montclair relies in bringing this action.  See 42 U.S.C. § 12102(2)(A).

[5]Being "regarded as having such an impairment" is described in the ADA as follows:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> (B) [the "being-regarded-as-having-such-an-impairment" definition of disability] shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3)(A) & (B).

activity.  *ECF 5 at ¶¶ 7, 10*; 42 U.S.C. § 12102(2)(A).  But Montclair cannot show that he had an impairment that substantially limited his ability to work at the time Westmoreland terminated his employment on February 22, 2010.  Montclair concedes that, as of September 30, 2009: (1) two doctors released him to work without any restrictions; (2) he agreed with the doctors' assessments; and (3) he felt he could go back to work without any restrictions.  *ECF 5 at ¶¶ 8 and 9; ECF 17-1 at 22*.  Thus, because it is undisputed that, at the time Westmoreland terminated his employment, Montclair was not limited in his ability to work, he cannot show that he was disabled under 42 U.S.C. § 12102(1)(A).

    Second, Montclair has not shown that he has a "record of impairment" as contemplated under the ADA.  To qualify as disabled under the "record of impairment" prong of the disability definition, Montclair must show that he "has a history of ... a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).  On the current record, he cannot do so.

    Westmoreland does not dispute that Montclair underwent back

surgery and had a recovery period during which he was unable to work. *ECF 11 at ¶¶ 7 and 8.* But, as noted, it is undisputed that two doctors released Montclair to return to work without any restrictions within about six months of Montclair's back surgery and that Montclair himself thought he could return to work without any restrictions. *ECF 17-1 at 4, 18-22, and 33-38.*

Generally, "a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA." *See, e.g., Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding that four-month long psychological impairment does not qualify as a disability under ADA); *Hudson v. Chertoff*, 2007 WL 2288062, at *5 (W.D. Wash. 2007) (knee injury requiring surgery was only temporary injury of approximately six-month duration and thus did not fall within "disability" definition); *Johnson v. City and County of San Francisco*, 2001 WL 263298, *4 (N.D. Cal. 2001) (hernia is not a "disability" under the ADA because it is a temporary condition that can be corrected with surgery).

In failing to respond to Westmoreland's summary judgment

motion, Montclair has presented no evidence that his back condition substantially limits his performance of any major life activity, including work, which is the major life activity upon which he bases this action. Thus, on the current record and in light of the foregoing authority, he has failed to show that he had a record of disability and was thus disabled under 42 U.S.C. § 12102(1)(B).

Third, Montclair has not shown that he has been "regarded as having ... an impairment" that substantially limits one or more major life activities. Although Montclair alleges in his Amended Complaint that he was told that his "supervisor did not feel comfortable with [him] working the dragline due to [his] back surgery[,]" *ECF 5 at ¶ 10*, Montclair has offered no evidence at this stage in the proceedings to support the allegation. Rather, Montclair's own deposition testimony tends to undermine the allegation.

For example, Montclair testified that, when he brought Dr. Dacre's second release to Westmoreland, both mine safety manager Kollekowski and mine manager Gillespie told him he was "good to go." *ECF 17-1 at 20-21*. Montclair also testified that, after giving

Westmoreland his unrestricted work releases from Drs. Dacre and Strahan, neither Goodheart nor Gillespie said anything about his back. *ECF 17-1 at 23-24*. Instead, he testified, Goodheart told him that there were no job openings. *ECF 17-1 at 24*.

Montclair has failed to establish that he has been "regarded as having ... an impairment" that substantially limits one or more major life activities. Thus, he has failed to show that he was disabled under 42 U.S.C. § 12102(1)(C).

Montclair has failed to show that he was disabled under any of the three prongs of 42 U.S.C. § 12102(1). Accordingly, he cannot establish a prima facie case of disability discrimination under the ADA and Westmoreland is entitled to summary judgment.

Because of its conclusion herein, the Court need not address Westmoreland's additional argument that Montclair cannot prove that Westmoreland terminated his employment because of his disability.

V. **CONCLUSION**

Based on the foregoing, IT IS ORDERED that Westmoreland's summary judgment motion (*ECF 15*) is GRANTED.

The Clerk of Court shall enter Judgment accordingly.

DATED this 8th day of March, 2013.

/s/ Carolyn S. Ostby  
United States Magistrate Judge